UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTHONY MICHAEL BIGGS,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No.  2:25-cv-00807-CKD

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively.  The parties have consented to magistrate judge jurisdiction.  For the reasons discussed below, the court will grant plaintiff's motion for summary judgment and remand for further proceedings, and deny the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1990, applied for DIB and SSI on March 23, 2022, alleging disability beginning January 7, 2020.  Administrative Transcript ("AT") 29.  Plaintiff alleged he was unable to work due to blindness or low vision, depression/bipolar mental illness, schizophrenia, and

1

traumatic brain injury.  AT 110.  On February 14, 2024, an Administrative Law Judge (ALJ) held a telephonic hearing on plaintiff's claim at which plaintiff was represented by counsel and a vocational expert (VE) testified.  AT 36-90.  On April 23, 2024, the ALJ issued a decision finding plaintiff not disabled between the alleged onset date in January 2020 and the date of the decision.  AT 17-30.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.
>
> 2.  The claimant has not engaged in substantial gainful activity since January 7, 2020, the alleged onset date.
>
> 3.  The claimant has the following severe impairments: diplopia[1]; bipolar disorder; schizophrenia, depression type; anxiety, traumatic brain injury; alcohol use disorder; and cannabis use disorder.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, but he should never be exposed to environmental hazards, such as high exposed places, moving mechanical parts, and open bodies of water.  He should avoid concentrated exposure to vibration.  He is limited to no more than occasional interactions with the public, coworkers, and supervisors.  He can deal with no more than occasional changes in a routine work setting.  In addition, he cannot perform work requiring a specific production rate, such as assembly-line work or work that requires hourly quotas.
>
> 6.  The claimant is unable to perform past relevant work.[2]
>
> 7.  The claimant was born [in 1990] and was 29 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.
>
> 8.  The claimant has at least a high-school education.
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills.
>
> 10.  Considering the claimant's age, education, work experience, and

---

[1] Colloquially known as double vision, per Merriam-Webster's Dictionary.

[2] The ALJ found that plaintiff had past relevant work as a cleaner, yard worker, delivery driver, and a composite job involving the duties of an installation worker and a delivery driver.  AT 28.

> residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.[3]
>
> 11.  The claimant has not been under a disability, as defined in the Social Security Act, from January 7, 2020 through the date of this decision.

AT 20-30.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled:  (1) the ALJ failed to provide sufficient reasons for discounting plaintiff's allegations of mental dysfunction; and (2) the ALJ erred in evaluating multiple medical opinions in the record.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability

---

[3] Relying on VE testimony, the ALJ found that plaintiff could perform jobs such as small parts assembler, routing clerk, and price marker.  AT 30.

3

or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

    A.  Medical Opinions

The ALJ reviewed nine medical opinions concerning plaintiff's mental and physical symptoms.  AT 26-28.  Plaintiff claims the ALJ erred in his evaluation of four of those opinions, authored by consultative psychiatrist Dr. Aita, treating psychiatrist Dr. Carillo, primary care physician Dr. Drakes, and opthamologist Dr. Wong.

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."  Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015).  In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another.  Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014); see also Marsh v. Colvin, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them").

The applicable rules provide that adjudicators for the Social Security Administration, including ALJs, evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements.  20 C.F.R. § 416.920c(c)(1)-(5).  Supportability and consistency are the most important factors in evaluating the persuasiveness of medical opinions.  See Woods v. Kijakazi, 32 F.4th 785, 791 (9th Cir. 2022).  "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence."  Id. at 791-92 (cleaned up) (citing 20 C.F.R. § 404.1520c(c)(1)).  "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim."  Id. at 792 (cleaned up) (citing 20 C.F.R. § 404.1520c(c)(2)).  The third factor—"relationship with the claimant"—encompasses "the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed, ...

and whether the medical source has examined the claimant or merely reviewed the claimant's records." Id. at 792 (citing 20 C.F. R. § 404.1520c(c)(3)(i)–(v)). The ALJ must explain how she considered supportability and consistency, and may, but is not required, to explain how she considered factors three, four, and five. See id. at 792; see also 20 C.F.R. § 404.1520c(b)(2).

### 1. Dr. Aita

Morgan Aita, Ph.D., conducted a mental consultative exam of plaintiff on October 25, 2022. AT 1009-1015. Dr. Aita diagnosed plaintiff with schizophrenia and bipolar disorder. AT 1013. In a Mini Mental State Examination (MMSE) administered by Dr. Aita, plaintiff scored 27 out of 30 and "had no difficulty following simple and . . . understanding and completing complex directions." Based on the MMSE, Dr. Aita found plaintiff's "overall cognitive functioning" to be "unimpaired." AT 1013.

As to functional limitations, Dr. Aita found plaintiff moderately limited in the ability to cope with daily stressors. AT 1014. Dr. Aita also found plaintiff markedly limited in his capacity to interact with others including co-workers, noting: "The claimant's history is notable for significant interpersonal conflict. [He] experiences unpredictable outbursts of significant aggressive and violent behaviors." AT 1014; see AT 1011 (Dr. Aita's note that plaintiff "was arrested for attacking an officer during a psychotic episode. [He] served 8 months in jail and was recently released.").

Dr. Aita also found plaintiff markedly limited in the ability to complete a normal workday or workweek without interruptions resulting from a psychiatric condition. On this point, Dr. Aita noted: "The claimant is generally intact. However, they experience frequent and uncontrollable outbursts where they lose control and are a danger to others." AT 1014. Finally, Dr. Aita found plaintiff unable to handle funds in his own best interests, noting: "Although the claimant is able to perform basic calculations, they experience unpredictable episodes where they lose control and are unable to control their behaviors and impulses." AT 1015. In all other mental functional areas, Dr. Aita found plaintiff unimpaired. AT 1014.

The ALJ found Dr. Aita's opinion

not persuasive because it is contradicted by [plaintiff's] generally

5

adequate mental functioning . . . during the adjudicative period, as discussed in detail above.[4]  The opinion is also contradicted by the normal MMSE conducted by Dr. Aita.  In addition, the opinion is inconsistent with the effectiveness of the claimant's psychotropic medications and psychotherapy, which is well documented by the treatment records. [Record citations.]  Although the claimant alleges psychotic episodes and anger outbursts, he has not required psychiatric hospitalization since the alleged disability onset date.  Moreover, the opinion is inconsistent with the claimant's admitted ability to drive and his adequate daily living activities as discussed above[5], which indicate some mental capacity.

AT 23.

a.  Supportability

As to the factor of supportability, the ALJ found Dr. Aita's opined limitations to be contradicted by the MMSE test in which Dr. Aita found plaintiff's overall cognitive functioning unimpaired.  Plaintiff argues that his MMSE score was "irrelevant" to Dr. Aita's opined functional limitations in coping with daily stressors, interacting with others, and completing a normal workday or workweek.  (ECF No. 10 at 17.)

District courts in this circuit have found that a MMSE score showing "normal cognitive function" does not a constitute a legitimate reason supported by substantial evidence for rejecting a medical opinion that assesses a claimant's mood disorder symptoms or "other aspects of psychological functioning, such as . . . the social skills necessary to hold down a job." E.M. v. Kijakazi, 591 F. Supp. 3d. 595, 631-32 (N.D. Cal. Mar. 18, 2022) (collecting cases) (quoting Norris v. Comm'r of Soc. Sec. Admin., 2020 WL 1615535, *4 (D. Ariz. Apr. 2, 2020)).  In E.M., a psychological consultative examiner diagnosed the claimant with major depressive order, schizophrenia, and other mental disorders; she opined on the claimant's functional capacity based on the tests, interviews, and evaluation she conducted. Id. at 628.  The ALJ discounted the

---

[4] See AT 24-25.  Summarizing plaintiff's treatment records during the relevant period, the ALJ found that, "although he consistently complained of hallucinations and delusions and was frequently noted to be depressed, dysphoric, anxious, irritable, angry, paranoid, and guarded, he generally had good grooming, adequate hygiene, appropriate attire, calm and cooperative attitude, normal behavior, normal thought process, full orientation, adequate eye contact, normal speech, average intelligence, . . . good impulse control," and adequate memory, attention, insight, and judgment.  AT 25.

[5] See AT 25.

opinion in part because it was "contrary to the MMSE scores" from past evaluations, which suggested "normal cognitive function." Id. at 630-31.  The district court reasoned that the MMSE "measured E.M.'s cognitive functioning—not his mental health disorders—and thus pertained, if at all, to a narrow portion of [the consultative psychologist's] opinion." Id. at 631; see, e.g., Morris v. Berryhill, 358 F. Supp. 3d 875, 882-83 (D. Ariz. 2019) (rejecting ALJ's reliance on MMSE result to discount medical opinion where assessed limitations "were not limited to cognition issues, but included limitations that flowed from plaintiff's depressive and schizoaffective disorders.").  Here too, plaintiff's MMSE score was not a legitimate reason to discount Dr. Aita's opined limitations stemming from mood disturbances and/or mental health disorders.

Putting aside the MMSE score, the ALJ found that Dr. Aita's opinion was contradicted by plaintiff's adequate mental functioning during the relevant period, inconsistent with the effectiveness of treatment, and inconsistent with plaintiff's daily activities.  However, this evidence all goes to the consistency factor, leaving no valid discussion of the opinion's supportability, i.e., whether Dr. Aita's own treatment records or notes supported the opinion.  See Fidel R.P. v. O'Malley, 754 F. Supp. 3d 986, 992 (N.D. Cal. 2024) (analyzing supportability factor in terms of whether opinion was supported by opinion writer's own findings or treatment records). Under the regulations the ALJ must address the "supporting explanations presented by a medical source ... to support his or her medical opinion(s)."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  Here, the ALJ did not consider Dr. Aita's notes supporting the opinion, which referred to "frequent and uncontrollable outbursts" that were limiting in multiple functional areas and had at least some support in the longitudinal record.  See, e.g., AT 459-60 (during February 2022 emergency room visit, plaintiff "began shouting, making threats towards staff, and displaying aggressive behavior"); AT 798 (arrested next day for threatening crime with intent to terrorize); AT 859 (August 2021 note that police were called due to plaintiff "destroying mom's house and property. Anger, resisted arrest, terrorist threats.").  The ALJ's failure to make a valid finding on the supportability of Dr. Aita's opinion was harmful error.  Plaintiff is entitled to

/ / / / /

7

summary judgment on this claim.[6]

CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler, 775 F.3d at 1105 ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record as a whole creates serious doubt as to whether the claimant was, in fact, disabled during the relevant period. On remand, the ALJ is free to develop the record as needed, including asking a vocational expert hypothetical questions about available jobs based on a revised RFC. The court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand. The court also does not instruct the ALJ to credit any particular opinion or testimony. The ALJ may ultimately find plaintiff disabled during the entirety of the relevant period; may find plaintiff eligible for some type of closed period of disability benefits; or may find that plaintiff was never disabled during

---

[6] The court does not reach the remaining claims.

the relevant period, provided that the ALJ's determination complies with applicable legal standards and is supported by the record as a whole.

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 10) is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 14) is DENIED;

3. Judgment is entered for plaintiff; and

4. This matter is remanded for further administrative proceedings consistent with this order.

Dated:  March 17, 2026

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/bigg0807.bothdibssi.ckd